IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BERNARD WILLIAM BREESE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-430-RAW-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Bernard William Breese requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-eight years old at the time of the administrative hearing (Tr. 29, 34). He has a high school education and has worked as a shipping and receiving supervisor and production supervisor (Tr. 36, 70). The claimant alleges that he has been unable to work since December 31, 2015, due to fibromyalgia, history of cervical spine fusion, coronary artery disease, and chronic kidney disease (Tr. 194).

### Procedural History

On November 24, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 15, 175-78). His application was denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 5, 2019 (Tr. 15-23). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with frequent balancing, reaching, handling, and fingering; occasional climbing ramps or stairs; and never crouching, crawling, and climbing ladders, ropes, or scaffolds (Tr. 19). The ALJ then concluded that the claimant was not disabled

because he could return to his past relevant work as a shipping and receiving supervisor and production supervisor as generally performed (Tr. 21-23).

## Review

The claimant's sole contention of error is that the ALJ erred in evaluating his subjective complaints. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The ALJ found the claimant's spine disorder (history of cervical spine fusion and degenerative disc disease) and ischemic heart disease were severe impairments, but that his chronic kidney disease, sleep apnea, fibromyalgia, small hemorrhoids, abnormal liver function studies, high cholesterol, hypertension, shortness of breath and cough, right thumb pain, and previous bilateral medial meniscus tears were nonsevere (Tr. 17-18).  The relevant medical evidence reveals the claimant regularly followed-up with his primary care physician Dr. Becky Yarbrough between March 2014 and November 2018 and had normal physical examinations at these appointments (Tr. 291-98, 355-62, 391-400, 467-78, 624-50, 755-64).  Dr. Yarbrough also consistently noted the claimant's chronic kidney disease and fibromyalgia were stable (Tr. 296, 360-61, 396, 477, 624-50, 761).  At a follow-up appointment on May 15, 2018, Dr. Yarbrough indicated the claimant's fibromyalgia was at the root of most of his problems and noted he had a lot of somatic complains of pain and every trigger point associated with fibromyalgia (Tr. 476).  Similarly, at a follow-up appointment on November 15, 2018, she noted the claimant's fibromyalgia had been a very troublesome issue and noted he had a lot of joint complaints and back issues (Tr. 762).

The claimant was also regularly treated for coronary artery disease, peripheral vascular disease, and heart rhythm disorder between February 2014 and September 2017 (Tr. 321-23, 611-55). During this time, electrocardiograms consistently showed a normal sinus rhythm, the claimant's cardiovascular examinations were normal, and Dr. Manus frequently indicated the claimant was asymptomatic, active, and/or felt well (Tr. 611-55).

On June 7, 2016, the claimant presented to Dr. Evans and reported pain in his right thumb that he had been experiencing for "quite some time." (Tr. 282). On physical examination, Dr. Evans found tenderness at the base of the claimant's right thumb, reduced range of motion in the claimant's right thumb carpometacarpal joint, and crepitus with range of motion (Tr. 282). He indicated the claimant's nerve conduction study was negative and that an x-ray showed moderate degenerative joint disease changes at the right thumb carpometacarpal joint (Tr. 282). Dr. Evans fitted the claimant with a "thumbkeeper" brace to wear on as needed basis (Tr. 282). At a follow-up appointment on August 11, 2016, the claimant was doing better, and apart from some tenderness in his thumb and slight crepitus, his physical examination was normal (Tr. 285). Dr. Evans indicated the claimant was asymptomatic and instructed him to continue using the brace as needed (Tr. 285). A May 2018 x-ray of the claimant's right wrist revealed arthritic changes of the right wrist and thumb that were "just slightly" progressed from 2016 x-rays (Tr. 474).

The claimant sporadically sought treatment for back pain at Wilburton Family Chiropractic between July 2016 and January 2018 and treatment notes indicate he felt better after each appointment (Tr. 403-09). An MRI of the claimant's lumbar spine

conducted on October 11, 2018, revealed mild degenerative changes, most notably at L5-S1, and chronic mild superior endplate compression of L1 (Tr. 577).

State agency physician Sean Neely, D.O. completed a physical RFC assessment on May 4, 2015, and found the claimant could perform the full range of light work (Tr. 102-04).

At the administrative hearing, the claimant testified that he was unable to work due to pain in his legs, back, shoulders, arms, and hands (Tr. 40-41).  He further testified that his treatment consisted of medication and chiropractic care as needed, and that steroid injections were recommended but had not begun due to an insurance issue (41-44, 63-64). The claimant stated that he wears a thumb brace when doing yard work or putting pressure on his hands and that such brace is helpful (Tr. 60-61).  As to specific limitations, the claimant indicated he could walk up to a mile before experiencing constant pain in his legs, could lift approximately twenty pounds, and could extend his arms out front or above his head for one minute before losing sensation and experiencing muscle spasms (Tr. 48-49). Regarding daily activities, the claimant testified that he was able to tend to his personal needs, prepare simple meals, do some yardwork, and do projects around the house such as changing air filters and installing an alarm system (Tr. 50-52).  The claimant also testified that he was walking up to five miles per day as recently as January 2018 to lose weight but stopped because of the pain it caused in his back and legs (Tr. 61-62, 68).

The claimant contends that the ALJ erred in analyzing his subjective statements because he did not discuss abnormal examination findings and treatment notes that supported his subjective statements, improperly relied on his daily activities to discount

such statements, mischaracterized his treatment as conservative, and did not discuss his exemplary work history. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In his written opinion, the ALJ summarized the claimant's function report and the medical evidence in the record. In discussing the opinion evidence, the ALJ found Dr. Neely's light work assessment persuasive, but included postural limitations in the RFC based on the claimant's lumbar spine MRI and hearing testimony (Tr. 21). In discussing the claimant's subjective symptoms, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (Tr. 19). In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements and the medical and other evidence of record, including: (i) normal chest x-rays and electrocardiograms; (ii) the effectiveness of chiropractic therapy; (iii) normal physical examination findings as to, *inter alia,* cardiovascular and respiratory

systems, gait, and range of motion in all major joints and extremities; (iv) his conservative treatment; (v) the lack of a recommendation for surgical intervention; and (vi) his daily activities (Tr. 19-21). Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**